**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAJESH GUPTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:17-cv-08375 |
| v. | ) | |
| | ) | Judge Matthew F. Kennelly |
| MORGAN STANLEY SMITH BARNEY | ) | |
| LLC, and MORGAN STANLEY SMITH | ) | |
| BARNEY FA NOTES HOLDINGS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF JESSICA KRENTZMAN IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION AND STAY ACTION**

I, Jessica Krentzman, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am currently employed as Regional Head of Employee Relations in Morgan Stanley's Human Resources Department. I have held this position since February 2014 and have worked on the Employee Relations team in Morgan Stanley's Human Resources Department since November 2012. Since April 2014, I have also served as Morgan Stanley's CARE Program Administrator.

2.     I have personal knowledge of the facts set forth in this Declaration, or know them in my capacity as a Morgan Stanley employee based on my review of corporate records created and maintained by Morgan Stanley in the regular course of its business and, if called to testify, I could and would testify competently to them.

3.     More than ten years ago, Morgan Stanley launched an internal employee dispute resolution program, entitled CARE (Convenient Access to Resolutions for Employees). Attached as **Exhibit 1** are true and correct copies of materials concerning the CARE arbitration program excerpted from the CARE Guidebook in effect from November 20, 2009, until it was

1

revised in 2015. This pre-2015 version of the CARE Guidebook, like other Morgan Stanley

Human Resources policies, was posted on me@MS, the Firm's intranet site where Morgan

Stanley Human Resources policies, including those governing CARE, are maintained and readily

available to and accessible by all Firm employees in the U.S., and which employees utilize to

access HR-related information and other information regarding and governing their employment,

including information on benefits, compensation, payroll, HR policies (including those

governing CARE), and diversity. This pre-2015 version of the CARE Guidebook describes,

*inter alia,* the CARE arbitration program in effect during that period, which included both a

mandatory arbitration program for some claims, and a voluntary arbitration program for other

claims. For example, this version of the CARE Guidebook states, in relevant part:

> If you are a current or former employee who was registered at any time during
> your employment with Morgan Stanley and you wish to pursue a statutory
> employment discrimination claim ..., you may, (1) proceed to arbitration, through
> (a) the arbitration forums administered by JAMS or AAA, if Morgan Stanley
> agrees, or (b) a self-regulatory organization (SRO), such as FINRA, or (2) go to
> court. For all other employment claims, registered employees will continue to be
> required to submit their claims to binding arbitration as required by their Form U-
> 4 Agreement.

This pre-2015 version of the CARE Guidebook also states:

> **Changes to CARE**
> Upon notice, the terms of CARE may change or be discontinued. Any material
> changes made to CARE will be announced in advance of their effective dates and
> will then become equally binding upon you and the Firm. In the event of such a
> change, pending claims will be governed by the Program in effect at the time of
> filing of the Request for Mediation/Arbitration Form(s) with the Program
> Administrator.

4.     In 2015, Morgan Stanley announced an expansion of the CARE Arbitration

Program to make arbitration mandatory for all covered claims. Morgan Stanley delivered an

explanatory notice to all employees in the U.S. via their individualized Morgan Stanley email

accounts that announced the expansion of the CARE Arbitration Program and contained links to their Arbitration Agreements, an updated CARE Guidebook describing the expanded CARE Arbitration Program, and a CARE Arbitration Program Opt-Out Form. These communications were sent in waves, starting in May 2015. As CARE Program Administrator, I was involved with these announcements of the expansion of the CARE Arbitration Program.

5.      Attached as **Exhibit 2** is a correct copy of an email communication from Morgan Stanley's Human Resources Department announcing the expansion of the CARE Arbitration Program that was delivered to and received by Plaintiff, Rajesh Gupta ("Mr. Gupta"), on September 2, 2015, via his Morgan Stanley email account, using his assigned individual email address. The Firm's records show that the email did not trigger an automatic reply out-of-office message, and that Mr. Gupta was not on a leave of absence at any time from September 2, 2015 to October 2, 2015.

6.      This email has the subject line "Expansion of CARE Arbitration Program" and includes an explanatory notice announcing that, effective October 2, 2015, arbitration under the new CARE Arbitration Program will be "mandatory for all employees", "registered and non-registered" unless they chose to opt out of the CARE Arbitration Program:

> Morgan Stanley is announcing the expansion of CARE ... to extend arbitration obligations for all US employees – registered and non-registered. Effective October 2, 2015, arbitration under the CARE Arbitration Program will be mandatory for all employees ... and all covered claims ... will be resolved through final and binding arbitration on a non-class ... action basis as more fully described in the Arbitration Agreement and CARE Guidebook.

This email also includes links to the Arbitration Agreement, the updated CARE Guidebook describing Morgan Stanley's CARE Arbitration Program, and a CARE Arbitration Program Opt-Out Form, and employees could access and review those documents by clicking on those links.

3

7.     The notice included in the text of the email explained that the Arbitration Agreement and the CARE Arbitration Program would become effective in 30 days, and made clear that continuing employment with Morgan Stanley after the effective date of the Arbitration Agreement and the CARE Arbitration Program, October 2, 2015, would constitute acceptance of the Arbitration Agreement unless the employee opted out by following the instructions contained in the notice and the CARE Arbitration Program Opt-Out Form by completing, signing and submitting an effective CARE Arbitration Program Opt-Out Form by October 2, 2015:

> By continuing your employment with Morgan Stanley, you accept and agree to, and will be covered and bound by the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook, unless you elect to opt out of the CARE Arbitration Program by completing, signing and submitting an effective CARE Arbitration Program Opt-Out Form by October 2, 2015. ... If you remain employed and do not timely complete, sign and submit an effective CARE Arbitration Program Opt-Out Form, the Firm's records will reflect that you have consented and agreed to the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook. You will not have an opportunity to opt out at a later date.

8.     The notice also explained to employees, including Mr. Gupta, that:

> Your decision to opt out of the Arbitration Agreement and CARE Arbitration Program will not adversely affect your employment status with the Firm.

> If you have any questions about the Arbitration Agreement or the arbitration provisions in the CARE Guidebook, email carebox@morganstanley.com.

9.     The notice also advised employees, including Mr. Gupta, as follows:

> Please review the <u>Arbitration Agreement</u> and the <u>CARE Guidebook</u>. It is important that you read and understand the Arbitration Agreement and the CARE Guidebook as they describe the terms, features, and details of this program.

10.     Attached as **Exhibit 3** is a correct copy of the Arbitration Agreement delivered in this manner to Mr. Gupta on September 2, 2015.

4

11.     Attached as **Exhibit 4** are correct copies of materials concerning the CARE Arbitration Program excerpted from the CARE Guidebook delivered in this manner to Mr. Gupta on September 2, 2015.

12.     Attached as **Exhibit 5** is correct copy of the CARE Arbitration Program Opt-Out Form delivered in this manner to Mr. Gupta on September 2, 2015.

13.     Mr. Gupta could access and review the Arbitration Agreement, CARE Guidebook and CARE Arbitration Program Opt-Out Form attached as Exhibits 3, 4 and 5 by clicking on the links for each included in the email notice he received on September 2, 2015, a copy of which is attached as **Exhibit 2**.

14.     The CARE Arbitration Program Opt-Out Form advised employees:

> If you wish to opt out of the Arbitration Agreement and the arbitration provisions in the CARE Guidebook, you must complete, sign and return this form by email by October 2, 2015.
>
> \*       \*       \*
>
> Your CARE Arbitration Program Opt-Out Form must be received and acknowledged by return email to be effective. If you do not receive an acknowledgment that your form has been received within 10 days, it is your responsibility to follow up with carebox@morganstanley.com for more information.
>
> \*       \*       \*
>
> **RETURN THE COMPLETED OPT-OUT FORM BY
> OCTOBER 2, 2015 TO:**
>
> morganstanley.arbitopt@aonhewitt.com

15.     During the opt-out window, Morgan Stanley posted and maintained on me@MS a reminder notice about the expansion of mandatory arbitration under CARE and the deadline for opting out. This reminder was maintained and readily available to and accessible by all Morgan

Stanley Wealth Management field employees who, like Mr. Gupta, received the September 2, 2015 announcement of the Expansion of the CARE Arbitration Program:

**CARE Program Mandatory Expansion**

**Reminder Regarding Expansion of Mandatory Arbitration Under CARE**

Wealth Management field employees ... have received notice from Human Resources that the Firm's internal employee dispute resolution program, CARE, is being expanded to provide for mandatory arbitration of virtually all types of workplace disputes that cannot be resolved more informally. ... Effective October 2, 2015, arbitration under the CARE Arbitration Program will be mandatory for all these employees, and all covered claims between the Firm and such employees will be resolved through final and binding arbitration on a non-class ... action basis as more fully described in the Arbitration Agreement and CARE Guidebook.

By continuing employment with Morgan Stanley, employees will be covered and bound by the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook, unless they elect to opt out of the CARE Arbitration Program by completing, signing and submitting an effective opt-out form by October 2, 2015. Please carefully review the September 2 email from Human Resources and accompanying documents for more information, or contact CARE with questions at carebox@morganstanley.com.

16.     Mr. Gupta had the choice of continuing employment with Morgan Stanley with or without arbitration.  Although he chose to continue his employment with Morgan Stanley after October 2, 2015, he never chose to opt out of the Arbitration Agreement by following the instructions contained in the notice and the CARE Arbitration Program Opt-Out Form and completing, signing, and submitting the CARE Arbitration Program Opt-Out Form provided to him by the October 2, 2015 opt-out deadline.

17.     A review of contents of the Morgan Stanley email account of Mr. Gupta showed that he did not send an email to carebox@morganstanley.com with any questions or receive an email from morganstanley.arbitopt@aonhewitt.com acknowledging that he submitted a CARE

Arbitration Program Opt-Out Form during the period from September 2, 2015 to October 2, 2015.

18.     The Arbitration Agreement and CARE Arbitration Program went into effect as announced on October 2, 2015 for Morgan Stanley Wealth Management field employees who, like Mr. Gupta, received the announcement of the new mandatory arbitration program and copies of the Arbitration Agreement and CARE Guidebook on September 2, 2015 and chose not to opt out of the Arbitration Agreement.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed in Purchase, New York on ⟨Dec. 11⟩, 2017.

Jessica Krentzman

# EXHIBIT 1

**Morgan Stanley** | HR PORTAL

## CARE: Guidebook

Conflict, misunderstanding, and disagreement. It's difficult to imagine not encountering any of these, at least occasionally, in our work or personal lives. Conflict has always been a fact of life. At Morgan Stanley, we know that conflict sometimes occurs in the work environment and we want to ensure that we can respond to that conflict promptly, fairly and effectively. We view conflict as an opportunity to bring to light issues affecting our business and our employees. Our vision is to maintain a positive and productive work environment that allows our employees to succeed. To help achieve this vision, Morgan Stanley's Employment Dispute Resolution Program, CARE (Convenient Access to Resolutions for Employees) is available to assist employees in resolving workplace issues.

This guidebook describes the CARE process and provides you with information regarding what to do when you encounter conflict in your work environment. The guidebook walks you through each of the dispute resolution options that are available to you and sets forth the rules related to CARE that are binding upon you and the Firm.

If, after reading through the guidebook, you have any questions regarding the Program, we invite you to contact the Program Administrator at the CARE Office toll-free number: 1-866-CARE-123. The Program Administrator will serve as a resource for conflict resolution at Morgan Stanley by guiding employees through the options made available under CARE, answering questions, and overseeing the program. The Program Administrator can also serve as a neutral 3rd party in review of a workplace situation.

### Who is the CARE Program Administrator?

The CARE Program Administrator is an experienced employee relations and conflict resolution specialist who, as mentioned above, coordinates and oversees CARE's daily operations. The Program Administrator:

- Provides information on each available option of CARE
- Serves as a resource for managers, Human Resources (HR), and employees
- Coaches employees on speaking to managers or HR
- Acts as a neutral third-party in reviewing and resolving workplace conflicts

How has Morgan Stanley traditionally handled work-related issues?
Morgan Stanley's Open Door Policy has always offered you the option of working with managers or HR representatives to address workplace concerns. These internal options have been and continue to be effective in resolving most issues quickly and to the satisfaction of the parties involved. These options are still available to you under CARE.

Until now, if a problem was not resolved internally, litigation or mandatory arbitration were the only options available to employees trying to resolve their claims. The CARE program builds on the Firm's open communication approach, providing you and Morgan Stanley with more opportunities to address and resolve work-related issues in an effort to avoid the cost, time, and dissatisfaction associated with resolving issues through litigation.

## What is CARE?

CARE broadens our options for dispute resolution by providing a comprehensive program with a Program Administrator serving as an additional resource for employees. As mentioned above, CARE does not alter the traditional ways in which disputes have been addressed internally. Rather, it provides you with additional options when the traditional methods of working with your manager or HR coverage officer are unsuccessful.

CARE provides you with three distinct processes for resolving disputes: informal resolution, mediation and arbitration. Informal resolution is the Firm's traditional dispute resolution method, also known as the Open Door Policy (i.e. working with your manager or HR coverage officer). As part of the informal resolution process, the CARE Program Administrator is also available to review a workplace conflict as a neutral 3rd party. If the dispute is not resolved through informal resolution or the Program Administrator, two external processes are available for certain eligible claims. Mediation utilizes the skills of an independent, neutral third-party neutral who works with the parties to attempt to resolve the issues at hand. It is a non-binding process unless you and the Firm reach a settlement and sign a written agreement. If mediation does not result in a settlement of the matter, arbitration is available.

Arbitration utilizes the skills of an independent third-party decision maker who is empowered to make a final decision that is binding on the parties. Binding arbitration is optional for all employees with statutory discrimination claims, whether registered or not. In addition, there is a Program Administrator who will work with you to keep lines of communication open with the Firm. The Program Administrator is available to answer any questions you may have, explore other avenues for resolution, and provide guidance through the external processes available through CARE.

## Why is Morgan Stanley offering CARE?

CARE is designed to benefit both you and Morgan Stanley. The goals of the Program are to resolve employment disputes impartially and as quickly, fairly and amicably as possible so that we can all focus our energies on our core business: being an outstanding leader in the financial services industry. We are confident that this Program will increase your satisfaction level in handling work-related disputes that you may encounter at Morgan Stanley. CARE is intended as an alternative to litigation.

## Is CARE available to me?

CARE is available to all current U.S. employees of Morgan Stanley and its domestic subsidiaries. The Program is also available to former U.S. employees of Morgan Stanley and its domestic subsidiaries.

## Can I address any work-related issues through CARE?

CARE offers you help in resolving work-related disputes that may arise between you and your supervisors, managers, coworkers, and the Firm. You may raise any work-related issues, questions or concerns through informal resolution. The Program Administrator is also available to assist you in exploring other options for resolution. Mediation and arbitration are available solely for employment claims against Morgan Stanley involving legal rights (such as breach of contract, wrongful discharge, discrimination, harassment, retaliation, and other legally protected rights).

## Registered* employees are required to utilize arbitration for claims other than statutory employment discrimination or harassment claims

Because of recent regulatory changes, registered and non-registered employees are subject to differing guidelines if an employee decides to take his or her claim to arbitration. Binding arbitration is optional for all non-registered employees for all claims and for registered

employees for statutory employment discrimination claims. Registered employees will continue to be required to utilize binding arbitration under their Form U-4 Agreement for claims involving legally protected rights, other than statutory employment discrimination or harassment claims.

**\*A registered employee is one who is required to register with the Financial Industry Regulatory Authority (FINRA) or other Self Regulatory Organization because he/she is a representative of a broker-dealer, investment adviser, or issuer of securities. Representatives are persons associated with Morgan Stanley who are engaged in the investment banking or securities business for Morgan Stanley including the functions of supervision, solicitation or conduct of business in securities or who are engaged in the training of persons associated with a member for any of these functions.**

**Issues not covered by CARE** There are certain types of issues that **are not covered** under CARE. These claims are not covered either because there are other remedies that are already available to you or for policy reasons. The issues that **are not covered** include:

- worker's compensation;
- unemployment compensation;
- claims expressly excluded from mediation or arbitration by statute;
- benefits claims and other claims under or relating to the Firm's pension or welfare employee benefit plans; and
- claims by Morgan Stanley or an employee for injunctive relief for unfair competition, use of trade secrets, confidential or proprietary information, or to enforce the terms of a non-compete agreement.

In addition, those issues that are otherwise handled through the Employee Assistance Plan (EAP) provider, LifeWorks, are not addressed by CARE. We recognize that those issues can affect you both at work and at home. The EAP is experienced in and better suited for assisting you with those types of issues. For more information about the Firm's EAP provider, LifeWorks, please contact 1-888-267-8126.

**Will Morgan Stanley make sure that I do not get into trouble for using CARE?**
Morgan Stanley wants you to feel comfortable raising your work-related concerns. Therefore, Morgan Stanley prohibits retaliation against you when you report, in good faith, a job-related concern or complaint, or otherwise support an investigation of such reports. Anyone who retaliates against you for reporting a job-related concern or complaint will be subject to disciplinary action, up to and including termination. The Firm will not retaliate against you in any way for using any aspect of CARE.

**How does CARE affect my right to file a claim with a federal or state agency?**
Morgan Stanley strongly encourages all employees to use CARE. While Morgan Stanley hopes that CARE will effectively handle all employment-related conflicts to everyone's satisfaction, CARE does not prevent you from filing a claim with a federal or state administrative agency in accordance with the regulatory or statutory requirements. If an employee does not exhaust informal resolution and mediation before proceeding to arbitration or filing a claim or complaint with a federal or state agency or court, it is Morgan Stanley's intent to ask the arbitrator, agency, or court to suspend the proceedings until informal resolution and mediation under the Program have been exhausted.

**Is my participation in CARE kept confidential?**
All proceedings and documents prepared in connection with informal resolution, mediation, and arbitration under CARE will be kept confidential to the utmost extent possible. Unless

otherwise provided by law, no employment dispute resolution proceedings or documents shall be disclosed to any person other than to the participants in those proceedings, their attorneys, witnesses, the mediator, the arbitrator, and, if applicable, the court and/or government agency. Morgan Stanley wants you to feel comfortable addressing your concerns through CARE

**Your easy-to-follow guide to using CARE**
As mentioned earlier, vital to the success of the CARE Program is your ability to access it easily when you encounter a conflict at work. If at any time you have questions or concerns regarding the Program, you can always contact the Program Administrator at 1-866-CARE-123. The Administrator is available to address any questions or concerns you may have. Set forth below are detailed instructions for accessing your options under CARE.

**Informal resolution**
There are neither forms to complete nor special procedures to follow in order to address your work-related concerns through informal resolution. All you need to do is discuss your concerns with your manager, HR or CARE Program Administrator. You may raise your concerns by telephone, in person, or in writing, whichever is most comfortable for you. Often, working with others through open and honest communication resolves issues quickly and effectively. To encourage such open and honest communication, the Firm **will not** retaliate against any employee in any way for using informal resolution or any other aspect of CARE in good faith.

While we strongly support your speaking directly with your supervisor on issues of concern, we also recognize that at times you may not feel comfortable doing so. If this is the case, you do have other options. Feel free to raise your concerns with your supervisor's immediate supervisor, your department head, the Human Resources Department, or the Program Administrator at 1-866-CARE-123. If you do raise your issue with your supervisor, your supervisor is encouraged to contact the appropriate HR coverage officer to assist in resolving the issue. HR coverage officers are  key internal resources for resolving disputes. It is our hope that informal resolution will be successful in resolving your work-related concerns. However, it is possible that informal resolution will not always resolve every concern. Mediation may be helpful.

*A special note regarding allegations of harassment, discrimination, and hostile work environment:*
Consistent with our first choice values, the Firm is committed to a work environment in which all individuals are treated with respect and dignity. Each individual should have the ability to work in a professional atmosphere that promotes equal employment opportunities and prohibits discriminatory practices, including harassment. Therefore, the Firm expects that all relationships among persons in the workplace will be business-like and free of bias, prejudice and harassment.

*As detailed in the Firm's Non-Discrimination and Anti-Harassment Policy (NDAH), the Firm prohibits and will not tolerate any form of discrimination or harassment, whether committed by management or non-supervisory personnel, employees of temporary agencies, vendors, contractors or guests.*

*The Firm strongly urges the reporting of all incidents of discrimination, harassment or retaliation, regardless of  the offender's identity or position, so that an effective and thorough investigation can be conducted promptly and discreetly, and effective remedial action can be taken when appropriate. Complaints will be accepted in writing or orally.*

*Employees who have experienced conduct they believe is contrary to the NDAH may have a legal obligation to take advantage of this complaint procedure.  An employee's failure to fulfill this obligation could affect his or right to pursue legal action. For more information on the*

*complaint procedure, see the Firm's* [*Non-Discrimination and Anti-Harassment Policy*](#)

**Mediation**
**What is mediation?**
Mediation is a dispute resolution process that relies upon the assistance and expertise of a mediator, who is an outside, neutral third party. A mediator is specifically trained to help you and the Firm understand your needs and interests. During the mediation, you and the Firm will have the opportunity to share your perspectives on the dispute. The mediator will help the parties try to reach an agreement by identifying issues, exploring possible areas for agreement, and attempting to identify a solution that is mutually satisfactory. It is important to remember that the mediator is not a decision maker or judge. The mediator will meet with each of the parties, together and/or separately, and assist the parties in resolving their own issues.

Because mediation is a problem-solving process as opposed to an adversarial process, third party witnesses and testimony are usually not presented to the mediator.

**What are some of the advantages of mediation?**Mediation has many advantages in the employment context. First, an objective, neutral third party, who you will help select, facilitates the mediation session. This person will have no interest in the outcome of the dispute, and will be able to assist you and the Firm to work through the situation. This often leads to a greater feeling of fairness than can result in court because both you and the Firm will be heard, and a third party will help you and the Firm to understand each other's perceptions. In addition, the discussions during the mediation are held privately and are confidential. Because both parties come to the mediation table in good faith trying to resolve their differences, the environment is non-adversarial and more conducive to resolving problems than arbitration or court. Another benefit of mediation is that you and the Firm maintain control of the outcome because neither party is required to accept any solution proposed at the mediation. Of course, parties frequently reach a resolution to their issues as a result of the mediation process, and that is the overriding goal. If you and the Firm are able to reach an agreement in mediation, the agreement will be outlined in writing and then both you and the Firm will sign the document. Once signed, the agreement will be final and binding on both parties. Finally, mediation is less expensive and much faster than taking claims to arbitration or court.

**How can I access mediation?**Since mediation is a process that relies on external assistance by a mediator, there are a number of steps that need to be followed. First, to access mediation, you must have attempted to address your concerns through informal resolution. You will then need to contact the Program Administrator, who will talk with you about your experience with informal resolution and answer any questions you may have, review your options, and provide guidance through the other processes available under the Program.

**What claims are eligible for mediation?**
Only employment claims against Morgan Stanley that could be brought under the laws of the United States or state or local laws, including common law, are eligible for mediation under CARE. Claims involving a legally protected right that can be mediated pursuant to this Agreement include, but are not limited to, the following:

1. Claims based upon alleged breach of contract. These claims include alleged breach of written or oral agreements, whether express or implied;
2. Claims based in tort;
3. Claims based upon allegations of unlawful discrimination (these claims include all bases of discrimination under federal law and under the law of the state or municipality in which employee works, including, for example, age, color, disability, national origin, race, religion, and sex. Some of the statutes that provide for such claims are Title VII of the Civil Rights Act, the Age Discrimination in Employment Act and the Americans With Disabilities Act,); and

4. Claims based upon any other alleged breach of a right created by constitution, statute, regulation, ordinance or common law.

Claims that **are not** eligible for mediation are listed under "**Issues not covered by CARE** " in this Guidebook.

To proceed to mediation, the Program Administrator will provide you with a Request for Mediation form that you must complete and submit. Since the issues that can be brought to mediation are more limited than those that can be addressed through informal resolution, the Program Administrator will review your mediation request and notify you if your concern is eligible for mediation. You must initiate the mediation within the time provided by applicable law for commencing an action against Morgan Stanley on your claim. If mediation is agreed to by you and the Firm, an Agreement to Mediate is signed before the mediation process begins. If your claim is not eligible for mediation or if mediation is not agreed to by you and the Firm, the Firm will continue to work with you to attempt resolution through the appropriate internal channels at Morgan Stanley.

**Who will administer the mediation?**
To ensure fairness, the mediation will be administered by either Judicial Arbitration and Mediation Service (JAMS) or the American Arbitration Association (AAA), both nationally recognized, independent organizations that provide mediators and arbitrators. Both of these organizations are well recognized for their neutrality and for the quality and diversity of the mediators they provide. You and the Firm may also mutually agree upon some other mediation organization or independent mediator. To learn more about JAMS or AAA, please contact the CARE Program Administrator.

**How will a mediator be chosen?**
You and the Firm will reach an agreement about which neutral organization to utilize, JAMS or AAA or another mutually agreed upon organization or independent mediator. When a mediation service is chosen, you and the Firm will then jointly select a mediator who will assist in resolving the dispute. This joint selection helps to ensure the fairness of the process. JAMS and AAA will provide a list of mediators from which you and the Firm will select a mediator. It is likely that you and the Firm will be able to agree on the mediator to use. However, if an agreement on a mediator cannot be reached, the administering dispute resolution organization will have the authority to choose the mediator.

**Should I hire a lawyer to help me through the mediation process?**
Legal representation at the mediation is optional for both you and the Firm. If you decide to bring an attorney to the mediation, the Firm will bring one as well. The Firm reserves the right to bring an attorney to mediation at any time. Of course, any legal fees and expenses you incur will be your own responsibility.

**Can I still go to court or arbitration if I have already tried mediation?**
Yes. If no settlement was reached in mediation, you can move forward with your claim in arbitration or court, if that is allowed. However, if a settlement was reached at the mediation, that agreement is binding on both you and the Firm.

If you have filed a proceeding in arbitration or court before requesting CARE mediation, you may still pursue CARE mediation provided you either dismiss the arbitration or court proceeding or agree to stay that proceeding pending the outcome of the CARE mediation.

**Does the mediation follow a set of rules?**
Although mediation is less formal than arbitration or court, the mediation process itself follows a particular set of rules to ensure that the process is fair and effective. Mediation under CARE will follow this CARE Guidebook and the American Arbitration Association* National Rules

for the Resolution of Employment Disputes (including Mediation and Arbitration Rules) ("AAA Rules") which are in effect at the time of the mediation, regardless of the organization from which the mediator may be selected. Any exceptions are noted below or in the Agreement to Mediate which is signed by both you and the Firm prior to the mediation session.

You are encouraged to review this Guidebook and the AAA Rules prior to participating in mediation. For a copy of the AAA Rules, please see the Program Administrator or go the AAA website (www.adr.org). This Guidebook and the AAA Rules supersede the rules and procedures of JAMS or any other neutral provider organization. In the event of a conflict between anything contained in this Guidebook and the AAA Rules, this Guidebook is controlling. The Mediation Rules in the AAA Rules are modified as follows by this Guidebook:

*The AAA, founded in 1926, is an independent public service, not-for-profit organization that offers a wide range of dispute resolution services to individuals, businesses, associations, and government. These services include the administration of dispute resolution methods such as mediation. The AAA is not connected with Morgan Stanley.*

1. Any references to the administrative or neutral fees of AAA are inapplicable, unless you and the Firm choose AAA on a particular case as a "mutually acceptable neutral provider."
2. All references to the AAA as administrator should be read as the "Designated Mediation Provider," meaning JAMS, unless you and the Firm choose AAA or some other mutually acceptable mediation provider as administrator for a particular case. The Morgan Stanley Program Administrator will assist the employee in deciding whether to utilize JAMS, AAA or some other mutually acceptable neutral provider.<
3. The mediation will be held in or near the city where the claim arose, unless the parties mutually agree on another location.
4. The mediation will be scheduled not less than 30 calendar days and not more than 60 calendar days after Morgan Stanley's receipt of the Request for Mediation.
5. No pre-mediation submissions are required beyond the initial request for mediation, which will be filed with the Morgan Stanley Program Administrator and the Designated Mediation Provider. A party who wishes to do so may provide the mediator with a brief position paper on the claims that need to be resolved, together with copies of any relevant documents. This submission must be made at least five (5) business days prior to the scheduled mediation session [and must be served via registered mail on all parties to the mediation. No reply to any pre-mediation submission shall be allowed without permission of the mediator.
6. The mediator will be chosen by the parties from a list provided by the Designated Mediation Provider. All mediators on the list will be knowledgeable about or have received training in employment law and have experience or training in the securities industry. The Designated Mediation Provider will be available to act as a facilitator in the selection process and to otherwise assist the parties in choosing a mutually acceptable mediator. If the parties are unable to agree on a mediator within 10 calendar days of their receipt of the list of potential mediators, the Designated Mediation Provider will appoint an experienced mediator from the pool from which the Designated Mediation Provider generated the list provided to the parties. Each party to the mediation will have the right to challenge a mediator selected by the Designated Mediation Provider on grounds of partiality or bias. The Designated Mediation Provider will rule on any challenge to the mediator.
7. Once the mediation is completed, the mediator will destroy all documents provided to him or her as well as any notes that the mediator made concerning the mediation.
8. There will be no record of the mediation process, except for the fact that the mediation was held, the name of the Designated Mediation Provider, the identity of the parties to the mediation, whether the case settled during the mediation process, and if the case was resolved, the terms of the resolution.
9. If an employee intends to have an attorney present at the mediation, the employee must provide Morgan Stanley with written notice that an attorney will be present at least ten (10)

business days before the mediation.

The Agreement to Mediate, signed by both the Firm and the Employee prior to entering into the mediation process, may also modify the AAA Rules and will supersede these Rules in the event of a conflict.

**How much does mediation cost?**
Morgan Stanley does not want mediation costs to create an obstacle to resolving disputes through mediation. Therefore, Morgan Stanley will pay for the administrative fees and expenses associated with mediation under CARE. This includes mediator and facilities fees. Any legal fees and other expenses you incur, however, will be your own responsibility.

In addition, if you or the Firm request a postponement of the mediation and administrative or mediator fees result from the postponement, the party requesting the postponement will be responsible for those fees.

**What if mediation does not resolve the dispute?**
It is our hope that mediation will be successful in resolving your work-related concerns that were left unresolved by informal resolution. However, Morgan Stanley recognizes that mediation may not be able to resolve every concern. Arbitration is designed to bring finality to issues that could not be resolved through informal resolution or mediation.

**Arbitration**
**What is arbitration?**
Like mediation, arbitration is a dispute resolution process that relies on the skills and expertise of an arbitrator, who is also an outside, neutral third party. Unlike a mediator, however, an arbitrator renders a final and binding decision after your employment dispute is presented to the arbitrator. While the arbitration process is not as formal as a court proceeding, it is much more formal than the mediation process. Initially, an arbitration hearing date at a neutral location will be arranged. In preparation for the hearing, documents may be exchanged and, in some cases, testimony in front of a court reporter will be taken. During the arbitration process, each party has the right to subpoena witnesses and documents, present evidence and arguments, and hear and challenge the other party's evidence and witnesses under the rules of arbitration. The arbitration hearing is held privately. Typically within thirty (30) days following the hearing, the arbitrator will issue a written final decision that is binding on both you and the Firm.

**Advantages of arbitration**
Arbitration has many advantages over traditional litigation in court. First of all, it is a confidential process. Second, you and the Firm have equal input into the selection of the arbitrator, who will be well-versed in employment law and the financial services industry. Additionally, arbitration is much faster and less expensive than litigation, which can disrupt careers and generate a tremendous amount of stress and worry. Just like court litigation, however, you do have the right to be represented by an attorney at the arbitration. The arbitrator's decision is final and binding on you and the Firm. By agreeing to arbitrate, you do waive your right to a trial by judge or jury in regard to arbitrable claims.

**Am I eligible to access arbitration?**
If you are a current or former employee who was **not registered** at any time during your employment with Morgan Stanley and you wish to pursue your employment claim(s) after attempting informal resolution and mediation, you may, (1) proceed to arbitration through the arbitration forums administered by JAMS or AAA, if Morgan Stanley agrees, or through a self-regulatory organization (SRO), such as FINRA or (2) go to court.

If you are a current or former employee who was **registered** at any time during your

employment with Morgan Stanley and you wish to pursue a statutory employment discrimination claim after attempting informal resolution and mediation, you may, (1) proceed to arbitration, through (a) the arbitration forums administered by JAMS or AAA, if Morgan Stanley agrees, or (b) a self-regulatory organization (SRO), such as FINRA, or (2) go to court. For all other employment claims, **registered** employees will continue to be required to submit their claims to binding arbitration as required by their Form U-4 Agreement. If a registered employee requests arbitration through CARE for a discrimination claim, but also pursues arbitration of a related non-discrimination claim through an SRO, Morgan Stanley may request that both claims be heard through a single arbitration forum.

**What claims are eligible for arbitration?**
Claims that are eligible for arbitration under CARE include the following:

1. Claims based upon alleged breach of contract (These claims include alleged breach of written or oral agreements, whether express or implied);
2. Claims based in tort;
3. Claims based upon allegations of unlawful discrimination (These claims include all bases of discrimination under federal law and under the law of the state or locality in which you work, including, for example, age, color, disability, national origin, race, religion, and gender. Some of the statutes that provide for such claims are Title VII of the Civil Rights Act, the Age Discrimination in Employment Act and the Americans With Disabilities Act);
4. Claims based upon any other alleged breach of a right created by constitution, statute, regulation, or ordinance; and
5. Claims pertaining to the enforceability of the Arbitration Agreement to be signed by Morgan Stanley and the employee prior to the arbitration hearing (These claims include, but are not limited to, all matters related to the formation of the agreement and to the arbitrability of particular disputes. Therefore, all questions regarding the arbitrability of claims will be decided by the arbitrator and not by a court).

**What claims are not eligible for arbitration?**
In addition to those claims listed as not covered under the Morgan Stanley Program under Issues not covered by CARE, arbitration under this Program does not cover claims that are expressly excluded by federal statute from arbitration or that are expressly required by federal statute to be arbitrated under a different procedure.

**How can I access arbitration?**
Since arbitration, like mediation, is an external process, there are a number of steps that need to be followed. First, to access arbitration you need to have already tried to address your concerns through informal resolution and mediation. If these first two options were unsuccessful, the Program Administrator remains available to guide you through the arbitration process. You must complete and submit a Request for Arbitration Form, which can be requested from the Program Administrator. The Program Administrator will then review your arbitration request and notify you whether the Firm agrees to arbitrate. If arbitration is agreed to by you and the Firm, an Arbitration Agreement is signed and the arbitration process begins.

You must initiate the arbitration process under CARE within the time provided by applicable law for commencing a legal action, if allowed, on your dispute. Once you elect to bring your claim in an arbitration forum, you may not bring any related claim in any other forum, unless the related claim is not eligible for arbitration under the Program. In addition, so that all arbitrable claims will be heard together in one arbitration, Morgan Stanley will request that you first dismiss or consolidate all other related claims that you may have pending in another arbitration forum.

**Who will administer the arbitration?**

To ensure fairness, the arbitration will be administered by JAMS or AAA or the selected self-regulatory organization. To learn more about JAMS or AAA, please contact the Program Administrator.

If you elect to resolve your employment-related claim through arbitration before FINRA, or any other SRO of which Morgan Stanley is a member (to the extent the dispute is arbitrable under the rules of that SRO), the arbitration will be governed by the rules and procedures of the applicable SRO. You will also be responsible for paying your share of the fees and costs as set by the SRO or the arbitrators. The rules of FINRA, and other SRO's are available from the individual SRO's.

**How will an arbitrator be chosen?**
You and the Firm will jointly select an arbitrator who will be resolving your dispute. This joint participation in arbitrator selection helps to ensure the fairness of the process. The outside dispute resolution organization will provide a list of arbitrators from which you and the Firm will select an arbitrator. It is likely that you and the Firm will be able to successfully reach agreement on the arbitrator to use. However, if no agreement on an arbitrator can be reached, the administering dispute resolution organization will have the authority to designate the arbitrator.

**Does arbitration follow a set of rules?**
The arbitration process through JAMS or AAA, like the mediation process, follows a particular set of rules to ensure that the process is fair and effective. Arbitration under CARE will follow this CARE Guidebook and the Arbitration Rules in the AAA Rules which are in effect at the time of the arbitration, regardless of the organization from which the arbitrator may be selected. Any exceptions are noted below or in the Arbitration Agreement which is signed by both you and the Firm prior to the arbitration hearing.

As previously mentioned, if you elect to resolve your employment-related claim through arbitration before FINRA, or any other SRO of which Morgan Stanley is a member (to the extent the dispute is arbitrable under the rules of that SRO), the arbitration will be governed by the rules and procedures of the applicable SRO. The rules of FINRA, and other SRO's are available from the individual SRO's.

If you choose JAMS or AAA as the arbitration provider, you are encouraged to review this Guidebook and the Arbitration Rules in the AAA Rules prior to participating in arbitration. You may obtain a copy of the AAA Rules through the AAA website (www.adr.org) or through the Program Administrator. This Guidebook and the AAA Rules, as well as the Arbitration Agreement signed by the parties, supersede the rules and procedures of JAMS. In the event of a conflict between anything contained in this Guidebook and the AAA Rules, this Guidebook is controlling.

The Arbitration Rules of the AAA Rules are modified by this Guidebook (and may be further modified by the Arbitration Agreement to be signed by you and the Firm prior to the arbitration hearing) as follows:

1. Any references to the administrative or neutral fees of AAA are inapplicable, unless you and Morgan Stanley agree to utilize the administrative or neutral services of AAA.
2. All references to the AAA as administrator should be read as the "Designated Arbitration Provider," meaning JAMS, AAA, an SRO, or some other mutually agreed upon arbitration provider.
3. The Morgan Stanley Program Administrator is available to assist the employee in deciding whether to utilize JAMS or AAA.
4. Request for Arbitration and Statement of Claim: Arbitration must be initiated by filing a

Request for Arbitration Form, together with a Statement of Claim, with the Morgan Stanley Program Administrator.

5. Joinder of Claims: An employee or former employee who submits a claim to arbitration under CARE must join with said claim and submit for resolution before the chosen arbitration forum any and all related claims concerning his or her employment with Morgan Stanley that are eligible for submission to arbitration under CARE. In other words, once an employee or former employee elects to arbitrate a claim through JAMS or AAA, that employee or former employee may not bring any related claim in any other forum.

6. Answer and Counterclaims: The answering statement must be filed within thirty (30) calendar days after the Designated Arbitration Provider´s receipt of the Request for Arbitration and Statement of Claim. Likewise, the claimant must file an Answer to any Counterclaim with the Designated Arbitration Provider within thirty (30) calendar days after the date of his or her receipt of the Answer and Counterclaims and simultaneously serve the Answer to Counterclaims on Morgan Stanley.

7. Changes of Claim: A party may amend its Statement of Claim, Answer or Answer to Counterclaims only if the party does so before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, within 20 calendar days after it was served.

8. Case Management Issues for Arbitration Management Conference: In accordance with the AAA Rules, the arbitrator will conduct an Arbitration Management Conference to discuss and resolve matters as outlined in the AAA Rules. In addition, the arbitrator and parties should discuss and resolve any issues regarding the following:

a. Pre-hearing briefs;
b. Subpoenas;
c. Post-hearing briefs;
d. Transcripts/Records of Proceedings;
e. Discovery, except that depositions will be limited as follows: each party shall have the opportunity to take a total of up to, but no more than, one day of depositions of up to, but no more than, three persons with direct personal knowledge of facts relevant to the matter(s) in controversy. A "day" is defined as 9:00 am to 5:00 p.m., with a one hour break for lunch. Consistent with the expedited nature of arbitration, additional depositions will not be available for discovery purposes. However, additional depositions may be permitted by the arbitrator(s) if essential in the interest of fairness to preserve the testimony of an indispensable witness (i) who is unlikely because of health reasons to be available to testify at the hearing or (ii) who is unable or unwilling to attend a hearing and may not otherwise be required to attend because he or she is outside the jurisdiction of the hearing forum. Even under such circumstances, depositions should be permitted only if the requesting party can demonstrate that there are no other means of obtaining the information and that the information is critical to the presentation of its case.

9. Postponements: If a cancellation fee results from the postponement of arbitration, the party requesting or responsible for the postponement will be responsible for the fee.

10. Arbitration in the Absence of a Party or Representative: Evidence provided in the absence of a party or representative may be accepted by telephone or by affidavit, in the arbitrator's sole discretion.

11. Governing Law: In making his/her decision, the arbitrator will apply the federal or state substantive law that would have governed the employment dispute had it been heard in the appropriate federal or state court (including, but not limited to, the applicable statutes of limitation, the applicable order and burdens of proof, and the applicable remedies). The arbitrator may not grant remedies that would have been unavailable if the dispute had been heard in federal or state court. In addition, the arbitrator may not award a remedy that neither you nor Morgan Stanley has requested. Finally, the arbitrator must resolve evidentiary disputes by applying the Federal Rules of Evidence.

The Arbitration Agreement signed by the employee and the Firm prior to the arbitration hearing may also further modify the AAA Rules and this Guidebook as agreed by the parties.

**How much does arbitration cost?**
The employee is only responsible for payment of $100 towards the administrative costs and arbitrator fees for the arbitration process before JAMS or AAA. Morgan Stanley will pay the balance of these costs. If a three person arbitration panel is requested, the requesting party will pay for the fees and costs associated with these additional arbitrators. The arbitrator(s) may determine that the arbitration costs and arbitrator fees should be distributed differently among the parties. The arbitrator(s) may also take financial hardship into consideration when allocating costs and fees. The expenses of witnesses will be paid by the party requiring the presence of the particular witnesses, except when the arbitrator decides to shift those expenses at the conclusion of the arbitration pursuant to law. Also, if the parties mutually agree to request a witness, the expenses of the witness will be shared equally by both parties.

If you elect to resolve your claim through arbitration before FINRA, or any other SRO of which Morgan Stanley is a member, you will be responsible for paying your share of the fees and costs as set by the SRO or the arbitrators.

If you choose to have counsel, you are fully responsible for your legal fees and expenses, regardless of arbitration forum.
Should I hire a lawyer to help me through the arbitration process?

You do have a right to be represented by an attorney of your choosing during any stage of the arbitration process, including at the arbitration hearing. If you do elect to be represented by an attorney in the arbitration, you will be responsible for paying his or her fees and related expenses, except as provided by law. The Firm will have an attorney present at the arbitration hearing.

**What happens if I do not want to arbitrate?**
If you choose not to arbitrate, you are free to continue to utilize internal resources or to pursue your claim in court, except those claims which registered employees are required to arbitrate as discussed above. Many employees, however, have found that arbitration provides a much faster and less expensive forum in which to be heard.

**CARE is here for you**
Because we are committed to addressing your work-related concerns in a timely, fair, and effective manner, Morgan Stanley encourages you to access CARE in the event you encounter a work-related concern. CARE allows for an opportunity to bring together those individuals closest to the issue in order to quickly resolve disputes. It also provides a forum to formally raise concerns and disputes that you and the Firm are unable to resolve through informal channels. By providing an experienced neutral third party to help settle a dispute, years of costly, frustrating and often disappointing litigation can be avoided.

We encourage you to review this Guidebook. If you have any questions regarding CARE, please feel free to contact your Human Resources coverage officer or the CARE Program Administrator at the toll-free number, 1-866-CARE-123.

**Important notes regarding CARE**
Your employment relationship with Morgan Stanley CARE creates more options for resolving your employment-related issues, but it does not create a contract with you or establish any of the terms of your employment. CARE does not create a contract of employment, express or implied, for any period of time or guarantee that your employment will end only under certain conditions. CARE does not alter or modify the "at will" employment relationship that exists

between you and the Firm.

**Changes to CARE**

Upon notice, the terms of CARE may change or be discontinued. Any material changes made to CARE will be announced in advance of their effective dates and will then become equally binding upon you and the Firm. In the event of such a change, pending claims will be governed by the Program in effect at the time of filing of the Request for Mediation/Arbitration Form(s) with the Program Administrator.

**Formal investigations will continue as required by law**

For allegations of discrimination or harassment in violation of federal, state or municipal discrimination laws, complaints will continue to be investigated in accordance with Morgan Stanley's Non-Discrimination and Anti-Harassment Policy and applicable law.

**Law governing CARE**

The substantive law that governs the employment disputes under CARE is the same state or federal law that would have applied had your claim been heard in the appropriate state or federal court.

Published: 11/20/09

# EXHIBIT 2

**From:** Human Resources <Human-260.Resources@morganstanley.com>
**Sent:** Wednesday, September 02, 2015 4:30 PM
**To:** rajesh.gupta2@morganstanleypwm.com
**Subject:** Expansion of CARE Arbitration Program

HUMAN RESOURCES

# Morgan Stanley

## Expansion of CARE Arbitration Program

September 2, 2015

More than 10 years ago, Morgan Stanley launched CARE (Convenient Access to Resolutions for Employees), the Firm's internal employee dispute resolution program. CARE provides employees with a quick and neutral way to raise and address workplace concerns. By combining internal (informal resolution) and external (mediation and arbitration) dispute resolution mechanisms, CARE promotes open and honest communication, increases mutual respect, and resolves employment-related concerns swiftly, fairly and economically.

Current registered employees are required to arbitrate most workplace claims under existing FINRA rules, and given the success of the CARE program, Morgan Stanley is announcing the expansion of CARE and modifications to related Firm policies and programs to extend arbitration obligations for all US employees – registered and non-registered. Effective October 2, 2015, arbitration under the CARE Arbitration Program will be mandatory for all employees in the U.S., and all covered claims between the Firm and employees will be resolved through final and binding arbitration on a non-class, non-collective and non-representative action basis as more fully described in the Arbitration Agreement and CARE Guidebook. Please review the Arbitration Agreement and the CARE Guidebook. It is important that you read and understand the Arbitration Agreement and the CARE Guidebook as they describe the terms, features and details of this program.

### Next Steps

By continuing your employment with Morgan Stanley, you accept and agree to, and will be covered and bound by the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook, unless you elect to opt out of the CARE Arbitration Program by completing, signing and submitting an effective CARE Arbitration Program Opt-Out Form by October 2, 2015. Employees on approved leaves of absence will have up to 30 days from their return to active employment to

submit a CARE Arbitration Program Opt-Out Form. If you remain employed and do not timely complete, sign and submit an effective CARE Arbitration Program Opt-Out Form, the Firm's records will reflect that you have consented and agreed to the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook. You will not have an opportunity to opt out at a later date.

Importantly, should you choose to opt out of the Arbitration Agreement and CARE Arbitration Program, you will continue to be bound by the terms of any other arbitration agreement or obligation applicable to you. Your decision to opt out of the Arbitration Agreement and the CARE Arbitration Program will not adversely affect your employment status with the Firm.

If you have questions about the Arbitration Agreement or the arbitration provisions in the CARE Guidebook, email carebox@morganstanley.com.

v2

2

# EXHIBIT 4

**CARE:  Guidebook**

**Morgan Stanley's Open Door Policy**

At Morgan Stanley, we know that conflict sometimes occurs in the work environment and we want to ensure that we can respond to that conflict promptly, fairly and effectively.  Our vision is to maintain a positive and productive work environment that allows our employees to succeed.

There are neither forms to complete nor special procedures to follow in order to address your work-related concerns through informal resolution.  All you need to do is discuss your concerns with your manager, HR or through the Firm's alternative dispute resolution program, CARE (Convenient Access to Resolutions for Employees) (see below).  You may raise your concerns by telephone, in person, or in writing, whichever is most comfortable for you.  Often, working with others through open and honest communication resolves issues quickly and effectively.

While we strongly support your speaking directly with your supervisor on issues of concern, we also recognize that at times you may not feel comfortable doing so.  If this is the case, you do have other options.   Feel free to raise your concerns with your supervisor's immediate supervisor, your department head, the Human Resources Department, or CARE (see below).  As part of the informal resolution process, CARE Employee Relations Specialists are also available to review a workplace conflict as neutral third parties.

*******************************

**NOTE Regarding The Integrity Hotline:**

As set forth in the Code of Conduct, all employees are responsible for reporting conduct that potentially violates the law, a regulation or Firm policy to their manager, Human Resources, or the Legal & Compliance Division. The Integrity Hotline provides an additional mechanism to report misconduct in cases where the employee believes the concern has not been appropriately resolved, or where the employee would prefer to report the concern through another channel. Employees utilizing the Integrity Hotline may do so anonymously and confidentially, as appropriate. The Integrity Hotline may be used to report concerns regarding potentially unlawful,

1

improper or questionable conduct by other employees, management, clients, counterparties, consultants or other contingent workers, suppliers/vendors or other third parties.

The Integrity Hotline can be reached at 1-866-448-8434. The Hotline is available 24 hours a day, 7 days a week.

The Firm takes allegations of misconduct seriously. Upon receiving a report of potential misconduct, the matter will be referred to the Legal & Compliance Division for follow-up and will be dealt with promptly and discreetly. Retaliation against any employee for reports made in good faith is prohibited.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**HOW CARE WORKS.**

CARE is designed to benefit both you and Morgan Stanley. CARE aims to resolve employment disputes impartially and as quickly, fairly and amicably as possible so that we can all focus our energies on our core business: being an outstanding leader in the financial services industry. CARE provides simple, fair, and low cost alternatives to litigation, and benefits employees and the Firm alike because it helps reduce both the time it takes to resolve issues and disputes, and the expenses associated with prolonged litigation, while at the same time providing all parties with the benefits of a less public process than court litigation.

In the event that you or the Firm decline to raise your concerns through informal resolution or are unable to resolve your concerns through informal resolution, CARE provides you and the Firm with the option of mediating the dispute. Mediation utilizes the skills of an independent, neutral third-party who works with the parties to attempt to resolve the issues at hand. It is a non-binding process unless you and the Firm reach a settlement and sign a written agreement.

If either you or the Firm decline to mediate or mediation of the dispute fails to achieve a resolution, then in order to proceed, the matter must be submitted to mandatory and binding arbitration in accordance with and subject to the rules, procedures, terms and conditions set forth below.

2

Arbitration utilizes the skills of an independent third-party decision maker who is empowered to make a final decision that is binding on the parties and cannot be appealed, except in rare circumstances. Binding arbitration is mandatory for both the Firm and all U.S. employees, whether registered or not.

This guidebook provides you with details regarding the CARE framework and sets forth the rules related to CARE that are binding upon you and the Firm. If, after reading through the guidebook, you have any questions regarding the Program, we invite you to contact CARE at 1-866-CARE-123. CARE personnel will serve as a resource for conflict resolution at Morgan Stanley by guiding employees through the options made available under CARE.

**COVERED CLAIMS.**

Only claims by you or Morgan Stanley involving legally protected rights and based on, arising out of, or which arose out of or in any way relate to your employment, compensation, and terms and conditions of employment with Morgan Stanley[1] anywhere in the world, or the termination thereof, and claims based on, arising out of, or which arose out of, or in any way relate to your recruitment or application for employment and hiring, that could be brought under any federal, state or local law, including common law, are "Covered Claims" eligible for mediation and arbitration under CARE. Covered Claims include all such legal claims between you and Morgan Stanley or any of Morgan Stanley's current, former and future parents, subsidiaries, affiliates, partners, predecessors, successors, assigns, and affiliated or related corporations or business entities, and any of its or their current, former, and future directors, officers, employees, agents, managers, shareholders, and other representatives, and all such claims based on, arising out of, or which arose out of or in any way relate to acts and omissions that occurred before the effective date of this Guidebook, but excludes the "Excluded Claims" listed below. Covered Claims involving a legally protected right that can be mediated and must be arbitrated pursuant to this Agreement include, but are not limited to, the following:

---

[1] For purposes of CARE, Morgan Stanley includes Morgan Stanley and all of its current, former and future domestic parents, subsidiaries, affiliates, partners, predecessors, successors, and affiliated or related corporations or business entities, including without limitation Morgan Stanley Smith Barney LLC. In addition, although access to CARE is limited to U.S. employees of Morgan Stanley, CARE applies to all Covered Claims regardless of what country you were working in at the time the claim arose.

1.     Claims based upon alleged breach of contract.  These claims include claims for alleged breach of written or oral agreements, whether express or implied, promissory estoppel claims, detrimental reliance claims, and quasi contract claims;

2.     Claims based in tort, defamation, breach of fiduciary duty and other common law claims;

3.     Claims based upon allegations of unlawful discrimination, harassment or retaliation (these claims include all bases of discrimination under or based on any federal, state or local law or regulation, including, for example, discrimination based on age, color, disability, national origin, race, religion, and gender.  Some of the statutes that provide for such claims are Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Equal Pay Act, and the Americans With Disabilities Act,);

4.     Claims under, based on, or in any way relating to any federal, state or local wage and hour law or regulation, including, without limitation, the Fair Labor Standards Act;

5.     Claims under, based on, or in any way relating to any federal, state or local constitution, statute or regulation of any country, state or municipality, including, without limitation, the Worker Adjustment and Retraining Notification Act, the Family and Medical Leave Act, and any other federal, state or local employment law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized;

6.     Claims based on, arising out of, or which arose out of or in any way relate to recruitment, applications for employment, and hiring; and

7.     Any other recognized legal claims based on, arising out of, or which arose out of or in any way relate to your employment, compensation, and terms and conditions of employment with Morgan Stanley anywhere in the world, or the termination thereof, except for Excluded Claims (as defined below).

**EXCLUDED CLAIMS.**

There are certain types of claims and issues that **are not covered** or subject to arbitration under CARE ("Excluded Claims"). These Excluded Claims are not covered or subject to arbitration under CARE either because there are other, exclusive procedures or remedies that are already available or for law or policy reasons. The following Excluded Claims are not covered or eligible for mediation or arbitration under CARE:

- Claims for worker's compensation benefits, but not retaliation claims arising out of or relating to claims for worker's compensation benefits;
- Claims for unemployment compensation benefits;
- Claims expressly precluded from mediation or arbitration by federal statute;
- Claims under the National Labor Relations Act, as amended, within the exclusive jurisdiction of the National Labor Relations Board;
- Applications by Morgan Stanley or you for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration;
- Claims brought by or against an employee who was employed as of May 20, 2015 and who previously opted-out of the Arbitration Agreement within the time period afforded that employee to do so; and
- Claims previously filed in court naming the employee as an individual plaintiff, defendant or other party before the date on which the employee first received the Arbitration Agreement.

**MEDIATION.**

*What is mediation?*

Mediation is a dispute resolution process that relies upon the assistance and expertise of a mediator, who is an outside, neutral third party. A mediator is specifically trained to help you and the Firm understand your needs and interests. During the mediation, you and the Firm will have the opportunity to share your perspectives on the dispute. The mediator will help the parties try to reach an agreement by identifying issues, exploring possible areas for agreement, and attempting to identify a solution that is mutually satisfactory. It is important to remember

that the mediator is not a decision maker or judge. The mediator will meet with each of the parties, together and/or separately, and assist the parties in resolving their own issues.

Because mediation is a problem-solving process as opposed to an adversarial process, third party witnesses and testimony are usually not presented to the mediator.

*What are some of the advantages of mediation?*

Mediation has many advantages in the employment context. First, an objective, neutral third party, who you will help select, facilitates the mediation session. This person will have no interest in the outcome of the dispute, and will be able to assist you and the Firm to work through the situation. This often leads to a greater feeling of fairness than can result in arbitration or court because both you and the Firm will be heard, and a third party will help you and the Firm to understand each other's perceptions. In addition, the discussions during the mediation are held privately and are confidential. Because both parties come to the mediation table in good faith trying to resolve their differences, the environment is non-adversarial and more conducive to resolving problems than arbitration or court. Another benefit of mediation is that you and the Firm maintain control of the outcome because neither party is required to accept any solution proposed at the mediation. Parties frequently reach a resolution to their issues as a result of the mediation process, and that is the overriding goal. If you and the Firm are able to reach an agreement in mediation, the agreement will be outlined in writing and then both you and the Firm will sign the document. Once signed, the agreement will be final and binding on both parties. Finally, mediation is less expensive and much faster than taking claims to arbitration or court.

*How can I access mediation?*

Since mediation is a process that relies on external assistance by a mediator, there are a number of steps that need to be followed. First, to access mediation, you must have attempted to address your concerns through informal resolution. If those efforts are unsuccessful, you will then need to contact CARE in order to explore the possibility of mediation. A CARE representative will provide you with a Request for Mediation form that you must complete and submit to CARE. Since the issues that can be brought to mediation are more limited than those that can be addressed through informal resolution, the CARE representative will review your mediation

request and notify you if your concern is eligible for mediation. You must initiate the mediation by submitting your completed Request for Mediation form to CARE within the time provided by applicable law for commencing an action against Morgan Stanley on your claim. If mediation is agreed to by you and the Firm, an Agreement to Mediate is signed before the mediation process begins.

*Who will administer the mediation?*

To ensure fairness, the mediation will be administered by Judicial Arbitration and Mediation Service (JAMS), a nationally recognized, independent organization that provides mediators and arbitrators. JAMS is well recognized for its neutrality and for the quality and diversity of the mediators and arbitrators it provides. To learn more about JAMS, please contact CARE or go to the JAMS website (www.jamsadr.com).

*How will a mediator be chosen?*

You and the Firm will jointly select a mediator who will assist in resolving the dispute. This joint selection helps to ensure the fairness of the process. JAMS will provide a list of mediators from which you and the Firm will select a mediator.

*Should I hire a lawyer to help me through the mediation process?*

Legal representation at the mediation is optional for both you and the Firm. If you decide to bring an attorney to the mediation, the Firm will bring one as well. The Firm reserves the right to bring an attorney to mediation at any time. Of course, any legal fees and expenses you incur will be your own responsibility, except as provided by law and as provided below for statutory claims in arbitration.

*Can I still go to arbitration if I have already tried mediation?*

Yes. If no settlement was reached in mediation, you can move forward with your claim in arbitration, if that is allowed. However, if a settlement was reached at the mediation, that agreement is binding on both you and the Firm.

If you have filed a proceeding in arbitration before requesting CARE mediation, you may still pursue CARE mediation provided you either dismiss the arbitration proceeding or agree to stay that proceeding pending the outcome of the CARE mediation.

*Does the mediation follow a set of rules?*

Although mediation is less formal than arbitration or court, the mediation process itself follows a particular set of rules to ensure that the process is fair and effective. Mediation under CARE will follow this CARE Guidebook, the JAMS Mediation Guide, and the Agreement to Mediate which is signed by both you and the Firm prior to the mediation session.

You are encouraged to review this CARE Guidebook, the JAMS Mediation Guide and the Agreement to Mediate prior to signing the Agreement to Mediate and participating in mediation. For a copy of the JAMS Mediation Guide and the Agreement to Mediate, please contact CARE at 1-866-CARE-123. You can also obtain a copy of the JAMS Mediation Guide and other information concerning mediation before JAMS by going to the JAMS website (www.jamsadr.com). In the event of a conflict between anything contained in this CARE Guidebook and the JAMS Mediation Guide, this CARE Guidebook will supersede the JAMS Mediation Guide and be controlling. In the event of a conflict between anything contained in this CARE Guidebook and the Agreement to Mediate signed by both you and Morgan Stanley prior to entering into the mediation process, the Agreement to Mediate will supersede and be controlling.

The following Rules shall apply to any mediation under CARE:

      1.      The mediation will be held in the county of your current or last principal place of employment with Morgan Stanley or, if not practicable, in the county closest to your current or last principal place of employment with Morgan Stanley where the mediation can be held, unless the parties mutually agree on another location. If your current or last principal place of employment with Morgan Stanley is outside of the U.S., the mediation shall be held in New York, New York, unless the parties mutually agree on another location.

8

2.      The mediation will be scheduled not less than 30 calendar days and not more than 60 calendar days after the Request for Mediation is received by CARE, unless you and Morgan Stanley agree otherwise.

3.      The mediator will be chosen by the parties from a list provided by JAMS.  All mediators on the list will be knowledgeable about or have received training in employment law and have experience or training in the securities industry.  JAMS will be available to act as a facilitator in the selection process and to otherwise assist the parties in choosing a mutually acceptable mediator.  Each party to the mediation will have the right to challenge a mediator selected by JAMS on grounds of partiality or bias, and any such challenge will be ruled on by JAMS.

5.      Once the mediation is completed, the mediator will destroy all documents provided to him or her as well as any notes that the mediator made concerning the mediation.

6.      There will be no record of the mediation process, except for the fact that the mediation was held, the name of the mediator, the identity of the parties to the mediation, whether the case settled during the mediation process, and if the case was resolved, the terms of the resolution.

7.      If you intend to have an attorney present at the mediation, you must provide Morgan Stanley with written notice that an attorney will be present at least ten (10) business days before the mediation.

*How much does mediation cost?*

Morgan Stanley does not want mediation costs to create an obstacle to resolving disputes through mediation.  Therefore, Morgan Stanley will pay for the administrative fees and expenses associated with mediation under CARE.  This includes mediator and facilities fees.  Any legal fees and other expenses you incur, however, will be your own responsibility, except as provided by law and as provided below for statutory claims in arbitration.

In addition, if you or the Firm request a postponement of the mediation and administrative or mediator fees result from the postponement, the party requesting the postponement will be responsible for those fees.

*What if mediation does not resolve the dispute?*

It is our hope that mediation will be successful in resolving your work-related concerns that were left unresolved by informal resolution. However, Morgan Stanley recognizes that mediation may not be able to resolve every concern. Arbitration is designed to bring finality to issues that could not be resolved through informal resolution or mediation.

**ARBITRATION.**

**If you or Morgan Stanley want to pursue a Covered Claim (as defined herein) that is not submitted or resolved through informal resolution or mediation, that Covered Claim must be resolved by final and binding arbitration in accordance with and subject to the rules, procedures, terms and conditions set forth below and in the Arbitration Agreement between you and Morgan Stanley to which this CARE Guidebook is annexed. This includes all Covered Claims, whether arbitration is initiated by you or Morgan Stanley, and whether or not the Covered Claim was submitted for informal resolution or mediation, and excludes all Excluded Claims (as defined herein). To the extent any of the rules, procedures, terms and conditions set forth below conflict with those set forth in the Arbitration Agreement between you and Morgan Stanley to which this CARE Guidebook is annexed, the rules, procedures, terms and conditions of that Arbitration Agreement shall govern.**

*What is arbitration?*

Like mediation, arbitration is a dispute resolution process that relies on the skills and expertise of an arbitrator, who is also an outside, neutral third party. Unlike a mediator, however, an arbitrator renders a final and binding decision after your employment dispute is presented to the arbitrator. While the arbitration process is not as formal as a court proceeding, it is much more formal than the mediation process. Initially, an arbitration hearing date at a neutral location will be arranged. In preparation for the hearing, documents may be exchanged and, in some cases, testimony in front of a court reporter may be taken. During the arbitration process, each party has the right to subpoena witnesses and documents, present evidence and arguments, and hear and challenge the other party's evidence and witnesses under the rules of arbitration. Typically

within thirty (30) days following the hearing, the arbitrator will issue a written final decision that is binding on both you and the Firm and cannot be appealed, except in rare circumstances.

*Advantages of arbitration*

Arbitration has many advantages over traditional litigation in court. For one thing, it is a less public process than court litigation. Also, you and the Firm have equal input into the selection of the arbitrator. Additionally, arbitration is much faster and less expensive than court litigation, which can disrupt careers and generate a tremendous amount of stress and worry. Just like court litigation, however, you do have the right to be represented by an attorney at the arbitration. The arbitrator's decision is final and binding on you and the Firm and cannot be appealed, except in rare circumstances. By agreeing to arbitrate, you and Morgan Stanley are, to the fullest extent permitted by law, giving up your and its right to a jury trial in any forum.

*Are both Morgan Stanley and I required to arbitrate?*

Yes. The arbitration provisions of CARE are mandatory for all U.S. employees of Morgan Stanley[2] and apply to all Covered Claims, whether arbitration is initiated by you or Morgan Stanley.

*Arbitration Forums*

**Registered Employees:** Except as specified herein or in the Arbitration Agreement between you and Morgan Stanley to which this CARE Guidebook is annexed, any arbitration of Covered Claims between registered employees or associated persons and Morgan Stanley or any of Morgan Stanley's current, former and future domestic parents, subsidiaries, affiliates, partners, predecessors, successors, assigns, and affiliated or related corporations or business entities, or any of its or their current, former, and future directors, officers, employees, agents, managers, shareholders, and other representatives, will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA") in accordance with the FINRA Code of

---

[2] For purposes of the arbitration provisions of CARE, Morgan Stanley includes Morgan Stanley and all of Morgan Stanley's current, former and future domestic parents, subsidiaries, affiliates, partners, predecessors, successors, and affiliated or related corporations or business entities, including without limitation Morgan Stanley Smith Barney LLC.

Arbitration Procedure for Industry Disputes ("FINRA Arbitration Rules")[3]. If a Covered Claim may not be arbitrated before FINRA or is ineligible for or otherwise excluded from or not subject to arbitration before FINRA, then such Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Arbitration Rules"),[4] except as specified herein or in the Arbitration Agreement between you and Morgan Stanley to which this CARE Guidebook is annexed. In addition, employment discrimination claims under, based on, or in any way relating to any federal, state or local law (including claims of harassment and retaliation under those laws) will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Arbitration Rules, except as specified herein or in the Arbitration Agreement between you and Morgan Stanley to which this CARE Guidebook is annexed.

**Non-Registered Employees**: Except as specified herein or in the Arbitration Agreement between you and Morgan Stanley to which this CARE Guidebook is annexed, any arbitration of Covered Claims between non-registered employees (who are also not associated persons) and Morgan Stanley or any of Morgan Stanley's current, former and future domestic parents, subsidiaries, affiliates, partners, predecessors, successors, assigns, and affiliated or related corporations or business entities, or any of its or their current, former, and future directors, officers, employees, agents, managers, shareholders, and other representatives, will be conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Arbitration Rules.[5] Thus, if you are a current or former employee who was neither registered nor an associated person during your employment with Morgan Stanley and you wish to pursue a Covered Claim, you must proceed to arbitration of such Covered Claim before JAMS.

All Covered Claims between you and Morgan Stanley or any of Morgan Stanley's current, former and future domestic parents, subsidiaries, affiliates, partners, predecessors, successors, assigns, and affiliated or related corporations or business entities, or any of its or their current, former, and future directors, officers, employees, agents, managers, shareholders, and other

---

[3] Information about FINRA, including its arbitration rules, can be found at FINRA's website (www.finra.org).
[4] Information about JAMS, including its arbitration rules, can be found at JAMS' website (www.jamsadr.com).
[5] Information about JAMS, including its arbitration rules, can be found at JAMS' website (www.jamsadr.com).

representatives, shall be heard together in a single arbitration forum with authority to hear all such claims. Thus, for example, if you are a registered employee or an associated person and you seek to pursue arbitration before JAMS or FINRA for one or more Covered Claims and you also seek to pursue arbitration of other Covered Claims before the other arbitration forum (or you seek to pursue any Covered Claims in court in violation of the terms of this arbitration agreement), Morgan Stanley may request that all of your Covered Claims be consolidated and heard together in a single arbitration forum with authority to hear all such claims.

*NOTE REGARDING ADDITIONAL EXCLUDED CLAIMS:*

In addition to those claims listed above as Excluded Claims, arbitration under CARE and this Arbitration Agreement does not cover claims that are expressly precluded from arbitration by federal statute or that are expressly required by federal statute to be arbitrated under a different procedure.

*How do I initiate arbitration?*

Since arbitration, like mediation, is an external process, there are a number of steps that need to be followed if you wish to initiate arbitration. You can obtain information about how to initiate arbitration before FINRA from FINRA's website ([www.finra.org](www.finra.org)) and about how to initiate arbitration before JAMS from JAMS's website ([www.jamsadr.com](www.jamsadr.com)). Information about how to initiate arbitration before other SROs is available from the individual SROs.

Any arbitration must be initiated within the time provided by applicable law for commencing a legal action, if allowed, on the claims in dispute. Once you or Morgan Stanley brings one or more claims in an arbitration forum, no Covered Claim may be brought in any other forum, unless that claim is not eligible for arbitration in the first forum. In addition, so that all arbitrable claims will be heard together in one arbitration, both you and Morgan Stanley may request that all claims be consolidated and heard together in one arbitration forum with authority to hear all of such claims.

*Who will administer the arbitration?*

To ensure fairness, the arbitration will be administered by the Designated Arbitration Provider before which the arbitration is heard (i.e., JAMS, FINRA, or another selected SRO). To learn

more about JAMS, FINRA, or other SROs and their respective arbitration rules, please contact CARE.

Information about JAMS, including its arbitration rules, can be found at the JAMS website (www.jamsadr.com). Information about FINRA, including its arbitration rules, can be found at FINRA's website (www.finra.org). Information about other SROs and their arbitration rules are available from the individual SROs.

*How will an arbitrator be chosen?*

You and the Firm will jointly select the arbitrator(s) who will be resolving your dispute. This joint participation in arbitrator selection helps to ensure the fairness of the process. The outside dispute resolution organization will provide a list of arbitrators from which you and the Firm will select an arbitrator or, where required, a panel of three arbitrators, using the dispute resolution organization's rules. It is likely that you and the Firm will be able to successfully reach agreement on the arbitrator(s) to use. However, if no agreement on an arbitrator or panel can be reached, the administering dispute resolution organization will have the authority to designate the arbitrator(s).

*Where will the arbitration take place?*

Arbitration shall be held in the county of your current or last principal place of employment with Morgan Stanley or, if not practicable, in the county closest to your current or last principal place of employment with Morgan Stanley where the arbitration can be held. If your current or last principal place of employment with Morgan Stanley is outside of the U.S., the arbitration shall be held in New York, New York.

*Does arbitration follow a set of rules?*

The arbitration process, like the mediation process, follows a particular set of rules to ensure that the process is fair and effective.

Except as specified herein or in the Arbitration Agreement between you and Morgan Stanley to which this CARE Guidebook is annexed, arbitration before FINRA, or any other SRO of which Morgan Stanley is a member (to the extent the dispute is arbitrable under the rules of that SRO),

will be governed by the FINRA Code of Arbitration Procedure for Industry Disputes ("FINRA Arbitration Rules") or the rules and procedures of the applicable SRO, or any successor rules or, if none exist, the FINRA or applicable SRO rules most applicable to employment claims and disputes and, if the forum no longer exists, the rules of the successor forum or, if neither the forum nor a successor forum exists, the rules most applicable to employment claims and disputes of a similar forum. FINRA's arbitration rules are available from CARE or FINRA, and can be found at FINRA's website (www.finra.org). The arbitration rules of other SROs are available from CARE or the individual SROs.

Except as specified herein or in the Arbitration Agreement between you and Morgan Stanley to which this CARE Guidebook is annexed, arbitration before JAMS will be governed by the rules and procedures set forth in this CARE Guidebook and the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Arbitration Rules") in effect at the time of the arbitration, or any successor rules or, if none exist, the JAMS rules most applicable to employment claims and disputes and, if JAMS no longer exists, the rules of the successor forum or, if neither the forum nor a successor forum exists, Arbitration Rules in the American Arbitration Association's National Rules for the Resolution of Employment Disputes in effect at the time of the arbitration, or any successor rules or, if none exist, the rules most applicable to employment claims and disputes of a similar forum. You are encouraged to review this Guidebook and the JAMS Arbitration Rules prior to participating in arbitration before JAMS. You may obtain a copy of the JAMS Arbitration Rules through the JAMS's website (www.jamsadr.com) or through CARE.

To the extent any of the terms, conditions or requirements of this CARE Guidebook conflict with the JAMS Arbitration Rules or FINRA Arbitration Rules or the rules and procedures of the applicable SRO, the terms, conditions or requirements of this CARE Guidebook shall govern. And to the extent any of the terms, conditions or requirements of this CARE Guidebook conflict with those set forth in the Arbitration Agreement between you and Morgan Stanley to which this CARE Guidebook is annexed, the terms, conditions or requirements of that Arbitration Agreement shall govern.

*Awards and Remedies*

Arbitrators are required to issue written awards and, subject to the parties' right to appeal or seek vacatur under applicable law, their awards shall be final and binding.  Any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction, and any judicial review of an arbitration award shall be subject to and in accordance with applicable law.  No arbitration award or decision will have any preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the arbitration.

Arbitrators are authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and costs where authorized by law.  Thus, for example, you shall be entitled to recover attorney's fees and costs in any arbitration in which you assert and prevail on any statutory claims or counterclaims to the same extent as you could in court.  As part of your costs, you may recover expert fees incurred by you to the same extent as you could in court.

*Modifications to JAMS Arbitration Rules*[6]

The JAMS Arbitration Rules are modified by this Guidebook and the Arbitration Agreement between you and Morgan Stanley to which this CARE Guidebook is annexed (and may be further modified by any  separate Arbitration Agreement entered into by you and the Firm prior to the arbitration hearing) as follows:

1.     Joinder of Claims and Counterclaims:  Any party who submits a claim or counterclaim to arbitration before JAMS must join with said claim or counterclaim and submit for resolution before JAMS any and all related Covered Claims concerning employment with Morgan Stanley that are eligible for submission to arbitration under CARE.  In other words, once a party submits a claim or counterclaim to arbitration before JAMS, that party may not bring any related claim or counterclaim in any other forum.

3.     Answer and Counterclaims:  Each respondent must file and serve his or its answering statement within thirty (30) calendar days after his or its receipt of the Request for Arbitration and Statement of Claim.  Likewise, the claimant must file an Answer to any

---

[6] These rule modifications apply only to arbitration before JAMS and do not apply to FINRA rules, the rules of any other SRO, or to arbitration before FINRA or any other SRO.

Counterclaim within thirty (30) calendar days after the date of the claimant's receipt of the Answer and Counterclaims and simultaneously serve the Answer to Counterclaims on each respondent.

4.      Amendments of Claims or Other Pleadings:  A party may amend its Statement of Claim, Answer, Counterclaims, or Answer to Counterclaims only if the party does so before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, within twenty (20) calendar days after it was served.

5.      Case Management Issues for Arbitration Management Conference:  The arbitrator and parties should discuss and resolve any issues regarding the following:

>    a.      Pre-hearing briefs;
>
>    b.      Subpoenas;
>
>    c.      Post-hearing briefs;
>
>    d.      Transcripts/Records of Proceedings; and
>
>    e.      Discovery.

7.      Arbitration in the Absence of a Party or Representative:  The arbitration may proceed in the absence of a party or representative who, after due notice, fails or refuses to be present.  An award shall not be made solely on the default of a party.  The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award, and such evidence may be accepted by telephone or by affidavit, in the arbitrator's sole discretion.

8.      Governing Law, Remedies, Motions, and Rules:  In any arbitration before JAMS, the arbitrator will apply the federal or state substantive law that would have governed the employment dispute had it been heard in the appropriate federal or state court (including, but not limited to, the applicable statutes of limitation, the applicable order and burdens of proof, and the applicable remedies).  The arbitrator may not grant remedies that would have been unavailable if the dispute had been heard in federal or state court.  Also, the parties may file and the arbitrator shall hear and decide at any point in the proceedings any motion permitted by the Federal Rules

17

of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine. In addition, the arbitration shall be subject to the same rules of evidence, burdens of proof and statutes of limitations as if the Covered Claim was being heard in the appropriate federal or state court.

9.      Arbitrators:  Any arbitration of Covered Claims before JAMS shall be conducted before a single arbitrator, unless all parties to the arbitration agree in writing to conduct the arbitration before a panel of three arbitrators.

10.     Arbitration Fees:  Except as provided by law and as provided below for statutory claims and counterclaims, in any arbitration before JAMS, you shall be responsible for any filing fee required to initiate arbitration or to assert any counterclaims up to the amount of the filing fee you would have incurred had you filed such claims in court, and Morgan Stanley shall be responsible for all additional arbitration filing fees, forum fees, arbitrator fees, and other administrative fees and costs of the arbitration forum.

11.     Awards:  JAMS Arbitrators are required to issue a written award, which shall include a reasoned and detailed decision stating the reasons upon which it is based and supported by essential facts and conclusions of law, and such awards shall be final and binding, and any judgment or award issued by an arbitrator or a panel of three arbitrators may be entered in a court of competent jurisdiction.  No arbitration award or decision will have any preclusive effect as to any other issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the arbitration.

*Should I hire a lawyer to help me through the arbitration process?*

You do have a right to be represented by an attorney of your choosing during any stage of the arbitration process, including at the arbitration hearing.  If you do elect to be represented by an attorney in the arbitration, you will be responsible for paying his or her fees and related expenses, except as provided by law and as provided below for statutory claims.  The Firm will have an attorney present at the arbitration hearing.

***Additional provisions applicable to arbitration of Statutory Claims or Counterclaims.***

Subject to any applicable statutory fee-shifting provisions, if you assert any statutory claims or counterclaims in arbitration with JAMS, FINRA or another SRO, you shall be responsible for any filing fee required to initiate arbitration of such claims or to assert such counterclaims up to the amount of the filing fee if any you would have incurred had you filed such claims in court, and Morgan Stanley shall be responsible for all additional arbitration filing fees, forum fees, arbitrator fees, and other administrative fees and costs of the arbitration forum. In addition, you shall be entitled to recover attorney's fees and costs (including reasonable expert fees) in any such arbitration in which you prevail on your statutory claims or counterclaims to the same extent as you could in court.

**CLASS ACTION, COLLECTIVE ACTION, AND REPRESENTATIVE ACTION WAIVERS.**

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AND MORGAN STANLEY AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD OR DETERMINED ON A CLASS ACTION, COLLECTIVE ACTION, OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT YOU ARE NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION MEMBER OR REPRESENTATIVE OR TO RECEIVE ANY RECOVERY FROM A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR IN ARBITRATION**.

You further agree that if you are included within any class action, collective action, or representative action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be.

Any issue concerning the validity or enforceability of any of the class action, collective action, and representative action waivers contained in this CARE Guidebook ("Waivers") shall be governed by and determined under and in accordance with the Federal Arbitration Act, and shall be decided by a court of competent jurisdiction, and not by an arbitrator. Any issue concerning arbitrability of a particular issue or claim pursuant to the arbitration agreement in this CARE Guidebook (except for issues concerning the validity or enforceability of the class action,

19

collective action, or representative action Waivers) must be resolved by the arbitrator, not the court.

Insofar as any Covered Claim is permitted by a court of competent jurisdiction to proceed on a class action, collective action, or representative action basis, it must do so only in a court of competent jurisdiction and not in arbitration.

Insofar as any Covered Claim is not eligible for arbitration or otherwise is excluded from or not subject to arbitration, for any reason, the class action, collective action, and representative action Waivers apply and remain valid and enforceable with respect to such Covered Claim.

Nothing in this Guidebook shall preclude you from pursuing or participating in any claim, including any class action, collective action, or representative action in court where your claim is based solely on your status as a customer or an investor and does not arise out of or in any way relate to your employment relationship with Morgan Stanley.

*Will Morgan Stanley make sure that I am not retaliated against for using CARE?*

Morgan Stanley wants you to feel comfortable raising your work-related concerns. Therefore, Morgan Stanley prohibits retaliation against you when you report, in good faith, a job-related concern or complaint, or when you participate in or otherwise support an investigation of any such reports, concerns, or complaints. Anyone who retaliates against you for reporting in good faith a job-related concern or complaint will be subject to disciplinary action, up to and including termination.

*How does CARE affect my right to file a claim with a federal or state agency?*

Morgan Stanley strongly encourages all employees to use CARE. While Morgan Stanley hopes that CARE will effectively handle all employment-related conflicts to everyone's satisfaction, nothing in the CARE program or this CARE Guidebook prohibits you from filing a charge, complaint or claim or communicating or cooperating with, providing information to, or participating in an investigation by the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency.

20

**Important notes regarding CARE**

*Your employment relationship with Morgan Stanley*

CARE creates more options for resolving your employment-related issues, but it does not create a contract of employment, express or implied, for any period of time or guarantee that your employment will end only under certain conditions. CARE does not alter or modify the "at will" employment relationship that exists between you and the Firm.

*Law governing the CARE Program*

The provisions set forth above in this CARE Guidebook relating to arbitration, including the class action, collective action, and representative action Waiver provisions, shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA"). All other provisions of the CARE Program and this Guidebook, shall be governed by and interpreted in accordance with the laws of the State of New York without regard to conflicts of law principles.

You have the right to challenge the validity of the terms and conditions of the CARE Program, including the provisions relating to arbitration set forth herein and the Arbitration Agreement to which this Guidebook is annexed on any grounds that may exist in law and equity, and Morgan Stanley shall not discipline, discharge, or engage in any retaliatory actions against you in the event you choose to do so or engage in other protected legal activity. Morgan Stanley, however, reserves the right to enforce the terms and conditions of the CARE Program, this Guidebook, and the Arbitration Agreement in any appropriate forum.

*Severability*

The provisions of this Guidebook shall be severable and, if any provision hereof shall be determined to be legally unenforceable or void, such unenforceable or void provision shall not affect the legality, validity or enforceability of the remaining provisions hereof and may be severed from the remaining provisions as appropriate, to the extent permitted by law, except that, in the event any of the class action, collective action, or representative action Waivers set forth in the arbitration agreement are determined to be invalid, unenforceable or void with respect to a particular Covered Claim, that Covered Claim and only that Covered Claim shall proceed in a court of competent jurisdiction and not in arbitration (and such court shall be the exclusive forum

for such claim) and the Waivers shall remain effective and enforceable with respect to all other Covered Claims.  If a court of competent jurisdiction determines that a particular provision of this Guidebook is invalid, unenforceable or void under the applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions.

# EXHIBIT 3

## ARBITRATION AGREEMENT

By entering into this Arbitration Agreement, you and Morgan Stanley ("Morgan Stanley" or the "Firm") agree as set forth below.  For purposes of this Arbitration Agreement, "Morgan Stanley" and "Firm" shall include Morgan Stanley & Co. LLC, Morgan Stanley Smith Barney LLC, and any and all of its and their  former, existing, and future domestic parents, subsidiaries, partners, predecessors, successors and affiliate corporations and business entities.

1.       **Binding Mutual Arbitration.**   You and Morgan Stanley agree that any Covered Claims (defined below) will be resolved by final and binding arbitration as set forth in this Arbitration Agreement and in the arbitration provisions of the CARE Guidebook, a copy of which is annexed hereto.  This Arbitration Agreement, including the Waivers set forth in paragraph 4 of this Arbitration Agreement, shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA").  This Arbitration Agreement applies with respect to all Covered Claims, whether initiated by you or Morgan Stanley, and makes arbitration the required and exclusive forum for the resolution of all Covered Claims.   **BY ENTERING INTO THIS ARBITRATION AGREEMENT, YOU AND MORGAN STANLEY EACH ACKNOWLEDGE AND AGREE THAT, TO THE FULLEST EXTENT PERMITTED BY LAW, YOU AND MORGAN STANLEY ARE GIVING UP YOUR AND ITS RIGHT TO A JURY TRIAL IN ANY FORUM**.

2.       **Covered Claims.**   Except for the Excluded Claims (defined below), and to the fullest extent permitted by law, Covered Claims include any and all claims or disputes between you and Morgan Stanley or any of its current, former, and future directors, officers, employees, agents, managers, shareholders, based on, arising out of, or which arose out of or in any way relate to your employment, compensation, and terms and conditions of employment with Morgan Stanley anywhere in the world, or the termination thereof, and claims based on, arising out of, or which arose out of or in any way relate to your recruitment or application for employment and hiring.  Covered Claims include but are not limited to contract, tort, defamation, breach of fiduciary duty and other common law claims, wage and hour claims, statutory discrimination, harassment and retaliation claims, and claims under, based on, or relating to any federal, state or local constitution, statute or regulation of any country, state or municipality, including, without limitation, the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and any other federal, state or local wage and hour, discrimination or employment law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized.   **This Arbitration Agreement applies to all Covered Claims, including any Covered Claims based on, arising out of, or which arose out of or in any way relate to acts and omissions that occurred before you and Morgan Stanley entered into this Arbitration Agreement.**

3.       **Excluded Claims.**   The following claims and disputes are not subject to this Arbitration Agreement:  (i) applications by any party for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, (ii) claims for workers' compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation benefits, (iii) claims for unemployment compensation benefits, (iv) claims under the National Labor Relations Act, as amended within the exclusive jurisdiction of the National Labor Relations Board, (v) any claim filed in court in which you are individually named as a plaintiff, opt-in plaintiff, defendant or other named party before the date on which this Arbitration Agreement was sent

1

to you, and (vi) any claim that is expressly precluded from arbitration by a federal statute. In addition, if you are individually named as a plaintiff, opt-in plaintiff, defendant or other named party in a court action before the date on which this Arbitration Agreement was sent to you as provided in subsection (v) of this paragraph, then this Arbitration Agreement shall not apply to your claims in such action, and shall also not apply to any claim brought on your behalf in any other certified or uncertified class, collective, or representative action pending in court at the time this Agreement was sent to you. Please see the attached Notice of Pending Class, Collective and/or Representative Action Claims for further information about certain pending claims outside of California and how your ability to assert claims in such actions may be affected by this Arbitration Agreement. This Arbitration Agreement also does not apply to any claims in a certified or uncertified class, collective and/or representative action pending in a federal or state court in California before the date on which this Arbitration Agreement was sent to you. Nothing in this Arbitration Agreement shall prohibit you from filing a charge, complaint or claim or communicating or cooperating with, providing information to, or participating in an investigation by the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency. You also have the right to challenge the validity of the terms and conditions of this Arbitration Agreement on any grounds that may exist in law and equity, and Morgan Stanley shall not discipline, discharge, or engage in any retaliatory actions against you in the event you choose to do so or engage in other protected legal activity. Morgan Stanley, however, reserves the right to enforce the terms and conditions of this Arbitration Agreement in any appropriate forum.

4.  **WAIVERS. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AND MORGAN STANLEY AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD OR DETERMINED ON A CLASS ACTION, COLLECTIVE ACTION, OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT YOU ARE NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION MEMBER OR REPRESENTATIVE OR TO RECEIVE ANY RECOVERY FROM A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR IN ARBITRATION**. You further agree that if you are included within any class action, collective action, or representative action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of any of the class action, collective action, and representative action waivers contained in this Arbitration Agreement ("Waivers") shall be governed by and determined under and in accordance with the FAA, and shall be decided by a court of competent jurisdiction, and not by an arbitrator. Any issue concerning arbitrability of a particular issue or claim pursuant to this Arbitration Agreement (except for issues concerning the validity or enforceability of the class action, collective action, or representative action Waivers) must be resolved by the arbitrator, not the court. Insofar as any Covered Claim is permitted to proceed on a class action, collective action, or representative action basis, it must do so in a court of competent jurisdiction and not in arbitration. Insofar as any Covered Claim is not eligible for arbitration or otherwise is excluded from or not subject to arbitration, for any reason, the class action, collective action, and representative action Waivers apply and remain valid and enforceable with respect to such Covered Claim. For the sake of clarity, nothing in this Arbitration Agreement shall preclude you from pursuing or participating in any claim, including any class action, collective action, or representative action in court where your claim is based solely on your status as a customer or an investor and does not arise out of or in any way relate to your employment relationship with Morgan Stanley.

5.    **Selection and Rules.** Except as specified herein, the applicable arbitration rules will be the rules of the selected arbitration forum as indicated below, or any successor rules or, if none exist, the rules most applicable to employment claims and disputes and, if the forum no longer exists, the successor forum or, if neither the forum nor a successor forum exists, the rules most applicable to employment claims and disputes of a similar forum.

       a.    **Forum:**

          i.    **FINRA & JAMS:**

**Registered Employees:** Except as specified herein or in the CARE Guidebook, any arbitration of a Covered Claim will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA") in accordance with the FINRA Code of Arbitration Procedure for Industry Disputes ("FINRA Arbitration Rules")[1]. If a Covered Claim may not be arbitrated before FINRA or is ineligible for or otherwise excluded from or not subject to arbitration before FINRA, then such Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Arbitration Rules"),[2] except as specified herein or in the CARE Guidebook. In addition, employment discrimination claims under or based on any federal, state or local law (including claims of harassment and retaliation under those laws) will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Arbitration Rules, except as specified herein or in the CARE Guidebook. To the extent any of the terms, conditions or requirements of this Arbitration Agreement conflict with the CARE Guidebook or the JAMS Arbitration Rules or FINRA Arbitration Rules, the terms, conditions or requirements of this Arbitration Agreement shall govern.

**Non-Registered Employees:** Except as specified herein or in the CARE Guidebook, any arbitration of a Covered Claim will be conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Arbitration Rules. To the extent any of the terms, conditions or requirements of this Arbitration Agreement conflict with the CARE Guidebook or the JAMS Arbitration Rules, the terms, conditions or requirements of this Arbitration Agreement shall govern.

       b.    **Hearing Location**

Arbitration shall be held in the county of your current or last principal place of employment with Morgan Stanley or, if not practicable, in the county closest to your current or last principal place of employment with Morgan Stanley. If your current or last principal place of employment with Morgan Stanley is outside of the U.S., the arbitration shall be held in New York, New York.

       c.    **Awards**

Arbitrators are required to issue a written award and, subject to the parties' right to appeal or seek vacatur under applicable law, their awards shall be final and binding, and any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction. No arbitration award or decision will have any preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the arbitration.

---

[1] Information about FINRA, including its arbitration rules, can be found at FINRA's website (www.finra.org).
[2] Information about JAMS, including its arbitration rules, can be found at JAMS' website (www.jamsadr.com).

#### d. **Remedies**

Arbitrators are authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and costs. Thus, for example, you shall be entitled to recover attorney's fees and costs in any arbitration in which you assert and prevail on any statutory claims or counterclaims to the same extent as you could in court.

#### e. **Additional Provisions Applicable to Arbitration at JAMS[3]**

##### (i) **Arbitrators**

Any arbitration of Covered Claims before JAMS shall be conducted before a single arbitrator, unless all parties to the arbitration agree in writing to conduct the arbitration before a panel of three arbitrators.

##### (ii) **Procedure**

The parties may file and the arbitrator shall hear and decide at any point in the proceedings any motion permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine. In addition, the arbitration shall be subject to the same rules of evidence, burdens of proof and statutes of limitations as if the Covered Claim was being heard in the appropriate federal or state court.

##### (iii) **Awards**

The Award shall include a reasoned and detailed decision stating the reasons upon which it is based and supported by essential facts and conclusions of law.

##### (iv) **Arbitration Fees**

Except as provided by law and as provided below for statutory claims and counterclaims, in any arbitration before JAMS, you shall be responsible for any filing fee required to initiate arbitration or to assert any counterclaims up to the amount of the filing fee if any you would have incurred had you filed such claims in court, and Morgan Stanley shall be responsible for all additional arbitration filing fees, forum fees, arbitrator fees, and other administrative fees and costs of the arbitration forum.

#### f. **Additional Provisions Applicable to Statutory Claims and Counterclaims**

Subject to any applicable fee-shifting provisions, if you initiate arbitration of statutory claims with FINRA or JAMS or assert any statutory claims as counterclaims, you shall be responsible for the filing fee required to initiate arbitration of such claims or to assert such counterclaims up to the amount of the filing fee you would have incurred had you filed such claims in court and Morgan Stanley shall be responsible for all additional arbitration filing fees, forum fees, arbitrator fees, and other administrative fees and costs of the arbitration forum.

6. **Severability.** The provisions set forth herein shall be severable and, if any provision of this Arbitration Agreement shall be determined to be legally unenforceable or void, such unenforceable or void provision shall not affect the legality, validity or enforceability of the remaining provisions hereof

---

[3] The provisions in this paragraph 5.e. only apply to arbitration at JAMS. They do not apply to arbitration at FINRA.

4

and may be severed from the remaining provisions as appropriate, to the extent permitted by law. In the event any of the Waivers set forth in paragraph 4 above are determined to be invalid, unenforceable or void with respect to a particular Covered Claim, that Covered Claim and only that Covered Claim shall proceed in a court of competent jurisdiction and not in arbitration (and such court shall be the exclusive forum for such claim) and the Waivers set forth in paragraph 4 above shall remain effective and enforceable with respect to all other Covered Claims. If a court of competent jurisdiction determines that a particular provision set forth herein is invalid, unenforceable or void under the applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions.

7.    **Employment at will.**    Nothing herein constitutes, or may be construed as constituting, a guarantee of employment for any length of time. Your employment with Morgan Stanley is on an "at will" basis. Accordingly, your employment can be terminated with or without cause at the option of either you or Morgan Stanley.

8.    **Governing Law**.    The provisions set forth herein, including the Waivers set forth in paragraph 4, shall be governed by and interpreted in accordance with the FAA.

9.    **Acknowledgement.**    You acknowledge and agree that, before agreeing to this Arbitration Agreement, you have had the opportunity and a reasonable period of time to review and consider this Arbitration Agreement and the CARE Guidebook, to review and discuss this Arbitration Agreement and the CARE Guidebook with counsel of your choice, and to raise any questions you wish of Morgan Stanley.

NOTICE OF PENDING CLASS, COLLECTIVE AND/OR REPRESENTATIVE ACTION CLAIMS

The following are the class, collective and/or representative action claims pending outside of California known to MSSB, which assert employment-related claims on behalf of employees of MSSB and in which your participation may be impacted by the Arbitration Agreement, as described below and in that Agreement. Cases pending in California state or federal court as of the date the Arbitration Agreement was sent to you are excluded from the Arbitration Agreement as set forth in paragraph 3 thereof:

**In Re: Morgan Stanley Smith Barney LLC Wage and Hour Litigation,** US District Court for the District of New Jersey, MDL 2280, Master Case No. 11-3121(**Pontilena**: lead case); Consolidated Case Nos. 11-6062 (**Otten**); 11-6063 (**Kuhn**); 11-6177 (**Rosenblatt**): These are four consolidated matters which assert claims on behalf of MSSB Financial Advisors ("FAs") employed since April 21, 2008 alleging that FAs should be classified as non-exempt employees and be eligible for overtime pay.

One of the legal claims in this case is brought under a federal law known as the Fair Labor Standards Act, and this claim is brought on behalf of all FAs in all states. It is possible that a class of FAs will be certified for this case. The Court has not yet determined whether a class of plaintiffs should be conditionally certified for this claim. If you are or were an FA that worked more than 40 hours, you may be a potential member of the class that may be certified for this case. If you have already opted-in or joined in the collective class, your right to continue to pursue your federal claim in this case will not be affected, regardless of whether you do or do not opt-out of the Arbitration Agreement. If you have not already opted into or joined in the collective class, in order to pursue such a claim in this case, you must opt-out of the instant Arbitration Agreement. If you do not opt-out of this Arbitration Agreement, you will, however, be able to pursue any such federal claim in an arbitration proceeding.

This case also asserts claims on behalf of "putative" or potential class or classes of unnamed FAs for alleged overtime under New Jersey, New York, and Connecticut law. It is possible that a class or classes of FAs will be certified for these state law overtime claims. If you are or were an FA in the states of New Jersey, New York or Connecticut, you may be a potential member of the class or classes that may be certified for these claims. In order to be able to pursue such a claim in this case, you must opt-out of the instant Arbitration Agreement. If you do not opt-out of this Arbitration Agreement, you will, however, be able to pursue any such claim in an individual arbitration proceeding.

**Devries, et al. v. Morgan Stanley & Co. LLC, et al.,** US District Court for the Southern District of Florida, Case No. 9:12-cv-81223-KAM: This lawsuit is brought by Fred Devries and other former pre-production Financial Advisor Associates, and involves claims that during the "pre-production" period of the Financial Advisor Associates Program they were not paid overtime in all weeks in which they worked more than 40 hours.

One of the legal claims in this case is brought under a federal law known as the Fair Labor Standards Act. A class of plaintiffs has been conditionally certified by the Court for this claim. If you have already opted-in or joined in this collective class, your right to continue to pursue your federal claim in this case will not be affected, regardless of whether you do or do not opt-out of this arbitration agreement.

This case also asserts claims on behalf of "putative" or potential class or classes of unnamed Financial Advisor Associates for alleged unpaid overtime under Illinois, New Jersey, New York, and Pennsylvania law. It is possible that a class or classes of Financial Advisor Associates will be certified

for these state law overtime claims. If you are or were a Financial Advisor Associate that worked more than 40 hours during the pre-production period of the Financial Advisor Associate Program in the states of Illinois, New Jersey, New York or Pennsylvania, you may be a potential member of the class or classes that may be certified for these claims. In order to be able to pursue such a claim in this case, you must opt-out of the instant Arbitration Agreement. If you do not opt-out of this Arbitration Agreement, you will, however, be able to pursue any such claim in an individual arbitration proceeding.

**Hix v. Morgan Stanley & Co. LLC, et al.,** U.S. District Court for the District of Maryland, Case No. 15-cv-01157-MJG. This lawsuit is brought by Shelley Hix, a former Operations Associate and Service Associate, and asserts a claim under a federal law known as the Fair Labor Standards Act ("FLSA") on behalf of MSSB Operations Associates, Service Associates, Senior Service Associates, Senior Registered Service Associates, and Registered Service Associates (collectively "Service Associates") employed since January 13, 2012 alleging that they were not paid overtime in all weeks in which they worked more than 40 hours.

Plaintiff brings her FLSA claim in this case on behalf of all Service Associates nationwide. It is possible that a class of Service Associates will be certified for this case. The Court has not yet determined whether a class of plaintiffs should be conditionally certified for this claim. If you are or were a Service Associate that worked more than 40 hours, you may be a potential member of the class that may be certified for this case. If you have already opted-in or joined in the collective class, your right to continue to pursue your FLSA claim in this case will not be affected, regardless of whether you do or do not opt-out of the Arbitration Agreement. If you have not already opted into or joined in the collective class, in order to pursue such a claim in this case, you must opt-out of the instant Arbitration Agreement. If you do not opt-out of this Arbitration Agreement, you will, however, be able to pursue any such FLSA claim in an individual arbitration proceeding.

**Johnson v. Morgan Stanley & Co. LLC, et al.,** U.S. District Court for the Southern District of New York, Case No. 15-cv-04865-RJS. This lawsuit is brought by Darlene Johnson and Sally Kolkmeyer, former Client Service Associates, and asserts a claim under a federal law known as the Fair Labor Standards Act ("FLSA") on behalf of MSSB Client Service Associates, Portfolio Associates, Senior Client Service Associates, Registered Associates, and Senior Registered Associates (collectively "CSAs") employed since June 23, 2012 alleging that they were not paid overtime in all weeks in which they worked more than 40 hours.

Plaintiff brings her FLSA claim in this case on behalf of CSAs nationwide. It is possible that a class of CSAs will be certified for this case. The Court has not yet determined whether a class of plaintiffs should be conditionally certified for this claim. If you are or were a CSA that worked more than 40 hours, you may be a potential member of the class that may be certified for this case. If you have already opted-in or joined in the collective class, your right to continue to pursue your FLSA claim in this case will not be affected, regardless of whether you do or do not opt-out of the Arbitration Agreement. If you have not already opted into or joined in the collective class, in order to pursue such a claim in this case, you must opt-out of the instant Arbitration Agreement. If you do not opt-out of this Arbitration Agreement, you will, however, be able to pursue any such FLSA claim in an individual arbitration proceeding.

Copies of the complaints and other matters filed before the court in the actions referenced above can be accessed through http://www.pacer.gov/

Except as provided below, unless you opt-out of the Arbitration Agreement, you will no longer be able to participate in any of these actions as a class, collective, or representative action member, or to file any Covered Claims (as defined in the Arbitration Agreement) on a class, collective, or representative basis whether in court or in arbitration, but you will be able to bring your individual Covered Claims in arbitration. If you were individually named as a plaintiff or opt-in plaintiff in any of the above-listed actions before the date on which this Arbitration Agreement was sent to you, then this Agreement shall not apply to your claims in such action, and shall also not apply to any claim brought on your behalf in any other certified or uncertified class, collective, or representative action pending in court at the time this Arbitration Agreement was sent to you. This Arbitration Agreement also does not apply to any claims in a class, collective and/or representative action pending in a federal or state court in California before the date on which this Arbitration Agreement was sent to you.

# EXHIBIT 5

## CARE ARBITRATION PROGRAM OPT-OUT FORM

If you wish to opt out of the Arbitration Agreement and the arbitration provisions in the CARE Guidebook, you must complete, sign and return this form by email by October 2, 2015.

### ☐ I ELECT TO OPT OUT OF THE CARE ARBITRATION PROGRAM

I have elected to opt out of the CARE Arbitration Program, including the Arbitration Agreement and the arbitration provisions in the CARE Guidebook. I understand that my decision to opt out of the CARE Arbitration Program does not affect any other arbitration agreement or obligation to which I may be subject, which shall continue in effect in accordance with the terms thereof.

_____           _____
Signature[1]                                               Date

_____           _____
Name (Print)                                             Morgan Stanley Email Address

_____
Home Address

_____
Morgan Stanley Employee ID

Your CARE Arbitration Program Opt-Out Form must be received and acknowledged by return email to be effective. If you do not receive an acknowledgment that your form has been received within 10 days, it is your responsibility to follow up with carebox@morganstanley.com for more information.

**RETURN THE COMPLETED OPT-OUT FORM BY OCTOBER 2, 2015[2] TO:**

morganstanley.arbitopt@aonhewitt.com

[1] By typing your name on the form you are signing the Opt-Out Form electronically. You agree that your typed name on the Signature line of the form is the legal equivalent of your manual signature on the Opt-Out Form and constitutes your agreement to opt out of the CARE Arbitration Program.

[2] Employees on an approved leave of absence as of September 2, 2015 will have up to thirty (30) days from their return to active employment to submit the CARE Arbitration Program Opt-Out Form.

v2